1                    UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF CALIFORNIA

3                            --o0o--

4    UNITED STATES OF AMERICA      ) Case No. 1:02-cr-05301-OWW
                                   )
5                    Plaintiff,    ) Fresno, California
                                   ) Monday, May 8, 2006
6         vs.                      ) 3:21 P.M.
                                   )
7    BROOKE ROWLAND,               ) Hearing re:  sentencing.
                                   )
8                    Defendant.    )
     _____)

9
                     TRANSCRIPT OF PROCEEDINGS
10         BEFORE THE HONORABLE OLIVER W. WANGER
                UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For Plaintiff:            JONATHAN B. CONKLIN
13                             U.S. Attorney's Office
                               2500 Tulare Street, Suite 4401
14                             Fresno, CA   93721
                               (559) 497-4094
15
     For Defendant:            KATHERINE L. HART
16                             Law Offices of Katherine Hart
                               2055 San Joaquin
17                             Fresno, CA   93721
                               (559) 256-9800
18
     Court Recorder:           MICHELLE ROONEY
19                             U.S. District Court
                               2500 Tulare Street, Suite 1501
20                             Fresno, CA   93721
                               (559) 499-5928
21
     Transcription Service:    Petrilla Reporting &
22                                Transcription
                               5002 - 61st Street
23                             Sacramento, CA   95820
                               (916) 455-3887
24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

1

1     <u>FRESNO, CALIFORNIA, MONDAY, MAY 8, 2006, 3:21 P.M.</u>

2

3     (Call to order of the Court.)

4          THE CLERK:  Item 23, CR-F-02-5301, United States v.

5     Brooke Rowland.  Sentencing.

6          MR. GAPPA:  David Gappa for the United States.

7          MS. HART:  Good afternoon, Your Honor.  Just one

8     moment.

9     (Pause.)

10         MS. HART:  Your Honor, Kathy Hart for Brooke Rowland.

11    I'm ready to proceed with the sentencing, and I have spent a

12    lot of time with Mr. Rowland.  He just reported to me that a

13    co-defendant had threatened him, and that's something that I

14    would deal -- report that to law enforcement, and report that

15    to the marshal so that he can be kept separate from that co-

16    defendant.

17         Obviously, that's serious, I just -- I don't think it

18    effects the sentencing procedure, but Mr. Rowland was a little

19    bit upset about this.

20         THE COURT:  Understood.  Mr. Gappa, you're appearing

21    for the government?

22         MR. GAPPA:  Yes.  Thank you, Your Honor.

23         THE COURT:  All right.  The threat that was just

24    received by Mr. Rowland, you are not addressing that as part of

25    the sentencing.

2

1        MS. HART:  Well, to my mind it doesn't effect the

2    sentencing agreement, it effects the assurances of his safety

3    and security, and I've explained to him before that the

4    government has a duty to protect his safety.  I'm very familiar

5    with the standards and everything, and I have explained that to

6    him.

7        THE COURT:  Well, let me ask.  What is the status of

8    his state sentence?

9        MS. HART:  The status of his state sentence is that

10   he has been sentenced on the state commitment, and he received

11   15 years to life, and that sentencing was earlier this

12   week -- this year -- was that January, wasn't that?

13       THE DEFENDANT:  Yes.

14       MS. HART:  Yes, it was January of 2006, and he was

15   taken to San Diego sometime about a year and a half ago, and

16   that's all resolved through a plea agreement.

17       THE COURT:  And what's the understanding, does he do

18   his state sentence before any federal time?

19       MS. HART:  His understanding is that this Court has

20   jurisdiction to impose the federal term first.  The original

21   plea agreement was that the federal and the state time would

22   run concurrently.  Now, the 15 year to life, that's

23   technically -- that's an indeterminate term --

24       THE COURT:  Yes.

25       MS. HART:  -- except that he could be eligible for

3

1    parole on that commitment in 85 percent of his 15 year to life

2    term.  So he would be eligible for parole on that sentence in

3    12.75 years, not 12.75 years from now, because he has about

4    four years in.

5             THE COURT:  In custody already.

6             MS. HART:  So he could be eligible --

7             THE COURT:  So it's in about eight and three quarters

8    years.

9             MS. HART:  Yes.  E could be eligible for parole on

10   that.  So we are assuming that a 20-year term actually is

11   longer than a 15 to life if you look at the first eligible

12   parole date.

13            THE COURT:  All right.  And any co-defendants in this

14   case, are any of them serving their state sentences first, or

15   are all of them going to be in federal institutions?

16            MS. HART:  I don't know.  I'm not sure about that,

17   Your Honor.  I can't answer that as to the co-defendants,

18   whether they're doing federal time first.

19            MR. GAPPA:  Your Honor, I believe that there are one

20   or more defendants, co-defendants that are serving state

21   sentences first.  For instance, Mr. Bowcut, had I think a 25 or

22   30 year to life term in Idaho.

23            THE COURT:  Yes.

24            MR. GAPPA:  Last time I checked he was --

25            THE COURT:  I'm trying to think of the San Diego

4

1    defendant.  There's another San Diego defendant who I thought

2    was going to first serve the state sentence.

3              MR. GAPPA:  That would be Mr. Whitmore.

4              MS. HART:  Well, that would be Mr. Whitmore, but what

5    Mr. Whitmore received, a several hundred year sentence in San

6    Diego, a term that he can't even possibly serve in his natural

7    life, whereas, my client, when he goes to state prison, state

8    prison computes what they call a minimum eligible release date,

9    MERD, and his minimum eligible release date would precede a 20-

10   year federal commitment.

11             THE COURT:  All right.  Well, my concern is simply

12   when he's going to be in a federal institution, relative to if

13   there's anybody else in a federal institution he's concerned

14   about being a threat to him.

15             MS. HART:  Well, it just -- he's only concerned -- he

16   wants to be separate from any co-defendant in this case.

17             THE COURT:  Yes.  All right.  Well, I will -- just

18   one?  All right.  I will note that to the Bureau of Prisons,

19   you provide me the name, and I'll give that name to the Bureau

20   of Prisons with my recommendation.

21             All right.  Mr. Rowland, have you read the

22   presentence investigation report that recommends your sentence?

23             THE DEFENDANT:  Oh, yes, yes.  That's the probation

24   report.

25             THE COURT:  Yes.  And had an opportunity to fully

5

1    discuss that with Ms. Hart, your attorney?

2            THE DEFENDANT:  Yes, I have.

3            THE COURT:  You understand the recommendation being

4    made for your sentence?

5            THE DEFENDANT:  Yes, I have.

6            THE COURT:  Our sentencing procedure is going to be

7    first I listen to Ms. Hart, she'll state her views concerning

8    what the right sentence is in your case, then Mr. Gappa will

9    give us the government's position.  I'll let Ms. Hart respond

10   if she needs to.  You may then present anything.  I will listen

11   to whatever you have to say.  Do you understand how we're going

12   to proceed?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Ms. Hart?

15           MS. HART:  Yes, Your Honor.  A stipulation was

16   submitted electronically last week, and it's an addendum to he

17   plea agreement recommending a 20-year federal term to precede

18   imposition of the defendant's state court prison sentence.  I

19   realize that this is highly unusual, that is, basically a

20   capitulation to the recommendation of the probation department

21   and the presentence report, and also a recommendation of the

22   government.

23           In fact, in the original plea agreement, that Mr.

24   Rowland signed, I think it was almost two years ago, the

25   government stated in the plea agreement, it's intention to seek

6

1   the maximum 20-year term.

2          Now, I know that ordinarily the Court would expect a

3   motion for downward departure, and it would have filed under

4   seal a psychological report by Dr. Headberg (phonetic).  But

5   Mr. Rowland's reason for wanting to do that, basically to

6   accede to and capitulate to the government's request, and

7   probation's request for the 20-year term is this:

8          And that is that if Mr. Rowland is sentenced in

9   evidentiary hearing federal system, and that sentence precedes

10  the state system, he thinks he will be in a much better

11  position eventually to be paroled by the state.

12         Now, as I explained, a 15-year to life term means

13  that he could be paroled in 12.75 years.  In fact,

14  historically, when one examines what California has done with

15  lifers, and this is lifers not just when they're committed for

16  murder offenses, but also lifers for sex offenses, kidnapping

17  and those various other state court commitments that carry a

18  life term, they end up staying in a lot longer, and the

19  paroleable -- the possibility of parole is -- has been

20  historically somewhat dismal in the state system, although that

21  changes, depending upon the vicissitudes of the moment, and

22  whichever governor is in office.

23         Nevertheless, my client believes that he will receive

24  better treatment, and possibly much better therapy and

25  rehabilitation in he federal system.  I know that the

7

1  California system now doesn't call itself the Department of

2  Corrections, it now calls itself the Department of Corrections

3  and Rehabilitation, and there are now some attempts to provide

4  rehabilitation within the last year or so.  But still, there

5  was a legislative pronouncement in the State of California in

6  1977 that basically said prisons are for punishment.

7          But when the Court looks at 3553, it doesn't say

8  that, it looks at rehabilitation:  deterrence, rehabilitation,

9  and those various factors.  So, my client believes that the

10  federal system will afford him the opportunity not only to pay

11  his debt, and its an extreme debt to society for what he did,

12  but that he can be rehabilitated, he can get treatment, he's

13  hoping to get the sex offender treatment at Buckner in North

14  Carolina.

15          So that is the reason for Brooke Rowland's taking

16  this very unusual move, and instead of asking me to file a

17  motion for downward departure, it was he who decided that he

18  wanted to ask for the 20 year term in the hopes that the

19  government would recommend, and he knows that he Court has, you

20  know, discretion to follow or not follow this addendum to the

21  plea agreement that we filed last week.

22          But it's my understanding that if Mr. Rowland does

23  agree to this 20-year term, that the government will make a

24  recommendation that the federal term precede the state term.

25          THE COURT:  All right.  Thank you very much, Ms.

8

1  Hart.  Mr. Gappa?

2       MR. GAPPA:  Your Honor, does the Court have the

3  addendum that counsel referred to that was filed last week?

4       THE COURT:  I have the report of Dr. Headberg.  I

5  have a request to file the report under seal.  I've got formal

6  objections and the government's response to the formal

7  objections.

8       Now I have been handed the addendum to the plea

9  agreement and it appears to be in the form of a stipulation

10  that Mr. Rowland has signed.

11       MR. GAPPA:  I just wanted to make sure the Court had

12  that, and that --

13       THE COURT:  I have it now.

14       MR. GAPPA:  And that so the record is clear, I don't

15  have any reason not to believe counsel.  I just think it would

16  be helpful in case the record is ever reviewed in the future

17  that the defendant confirm that those are his witnesses, that

18  he's relinquishing his request for something less than the 20

19  years for the reasons stated by counsel.

20       THE COURT:  Mr. Rowland, do you understand that this

21  addendum that you have signed agrees not to contest the

22  government's recommendation for a 20-year term of

23  incarceration, provided that the government recommends to the

24  Court that you be sentenced to a federal term of imprisonment

25  to precede -- and that means to go before your state court

1  commitment in San Diego County Central Division case CV-165314

2  in which you've been sentenced to a term of 15 years to life.

3  The purpose of the stipulation is to provide treatment,

4  deterrents and punishment, and it is your belief that if a

5  federal 20 year term precedes the imposition of any state court

6  confinement, the federal correctional facilities would provide

7  more effective rehabilitation and treatment than will a

8  California prison.

9        That's the substance of the stipulation.  Do you

10  agree to that?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  And accordingly, you give up your right

13  to recommend a sentence lower than 20 years.  I guess you're

14  going to withdraw the objections that have been filed to the

15  probation officer's recommendation and report in exchange for

16  the government's specific recommendation that any federal

17  custodial time precede state custodial time.  Do you intend

18  that?

19        THE DEFENDANT:  Yes, Your Honor.

20        THE COURT:  Do you agree with it?

21        THE DEFENDANT:  Yes.

22        THE COURT:  And do you understand that instead of a

23  lesser sentence, that there's going to be a joint request to

24  the Court by you and the government together to impose a 20-

25  year term, and under the Court's best estimate as to he first

1    year, if you comply with all conditions of your incarceration,

2    the motion would get -- there's no parole in the federal

3    system, it would be 54 days of good time credit, and so the 20

4    years would essentially be 19 of those years times 54 days,

5    that's the maximum that you would not serve, otherwise, you

6    will serve the entirety of your sentence that he Court

7    pronounces.  Do you understand all that?

8                THE DEFENDANT:  Yes, Your Honor.

9                THE COURT:  And is that what you want to do?

10               THE DEFENDANT:  Yes, Your Honor.

11               THE COURT:  And you've discussed that fully with Ms.

12   Hart?

13               THE DEFENDANT:  Yes, Your Honor.

14               THE COURT:  And mutually, that's your decision?

15   She's signed the stipulation as well?

16               MS. HART:  Yes, Your Honor.  We've discussed this

17   extensively.  Mr. Rowland signed that stipulation.

18               THE COURT:  All right.  Thank you very much.  The

19   Court is willing to accept the parties' recommendation.  Mr.

20   Gappa?

21               MR. GAPPA:  Your Honor, the only other thing is if

22   it's necessary, the government does recommend that he be

23   allowed to serve his federal sentence first.  The government

24   does not object to that, assuming that it's the 20-year

25   sentence that's contemplated.

11

1          THE COURT:  You've agreed to recommend it, not just
2    to not object.
3          MR. GAPPA:  If I -- well, that's what I meant to say,
4    that I recommend it.
5          THE COURT:  You didn't say it.
6          MR. GAPPA:  Okay.  I recommend --
7          THE COURT:  Is that your recommendation?
8          MR. GAPPA:  Yes.
9          THE COURT:  All right.  Thank you very much.  Mr.
10   Rowland, do you wish to say anything?
11         THE DEFENDANT:  Yes, Your Honor.  I'll try my level
12   best to keep this as brief as possible.  I regret everything
13   that I had done regarding this case, and to my children.  It
14   has effected their lives immeasurably over the past five years.
15   The quality of their lives has, you know, gone downhill.
16         I mean, it hasn't been good for anybody, and to look
17   at the -- what the kids have gone through, it's very
18   disheartening, and I want to -- I wanted to stipulate to the
19   maximum because I know that the federal system will provide the
20   treatment and care fore me, and actually put me into a
21   situation where I'm more into the solution than I would be in
22   the state environment.
23         The Federal Bureau of Corrections has programs that
24   are directly related to what I need, to what my needs are, and
25   also will help me to provide as Mr. Headberg had mentioned in

1   his report, to be able to grow in that environment versus being

2   in this state institution and not having that opportunity, and

3   not being able to be a benefit to others, or to myself, and as

4   far as being able to provide that.

5           I can't tell you how sorry I am for everything that

6   had happened, that I was involved in, and of course, I wish of

7   course to apologize more to my daughters for everything that

8   has happened.  And I hope and pray that their lives will mend,

9   and they will grow beyond this, and that someday, unification

10  may be possible in some way, shape, or form.

11          But I do wish to stipulate that I am sorry, and I

12  regret my actions, and I agree to the stipulation based on the

13  punishment that I will receive, and what I will be able to do

14  to better myself and others, and the environment that it will

15  provide.

16          Thank you.

17          THE COURT:  Thank you, Mr. Rowland.

18          Is there any legal cause why sentence should not now

19  be pronounced?

20          MS. HART:  No, there's not, Your Honor.

21          THE COURT:  The Court recognizes that the guidelines

22  are advisory, and that I must also consider the 3553 factors

23  under Title 18.  In this case, he base offense level for

24  conspiracy to sexually exploit minors by production of sexually

25  explicit material provides a 27 as the base offense level

13

1   because one of the victims was two year old, and had not

2   attained the age of 8 -- I should say the age of 12, because

3   the second was 8 years old, four levels are added because

4   sexually explicit photographs were taken of your two daughters.

5           Because you are a parent, and the minors were in your

6   custody, care, and control, the offense level is increased by

7   2.  That gives us an adjusted offense level of 33.

8           Now, there is a multiple count adjustment for

9   additional victims, and the objections have been withdrawn in

10  what I'm going to call the "Operation Hamlet" conspiracy, there

11  were 37 identified victims.  I recognize that you didn't

12  traffic in, nor did you contact, or participate with many of

13  them, but two of the co-conspirators in this case, Mr.

14  Emmerson, and to a lesser extent, but to a very large extent,

15  Mr. Whitmore did, and their communications, and the actual

16  physical abuse of their daughters, which were proved in the

17  Boobar trial.

18          By counting separately victims 1 through 5, and then

19  for 6 through 37, the maximum number of units for victims is 6,

20  we would get to an adjusted offense level of 33 plus 5, would

21  give us a combined adjusted offense level of 38, super-

22  acceptance of responsibility would bring us to a total offense

23  level of 33 -- I'm sorry, 35.

24          There are zero criminal history points, which puts

25  you in a criminal history category of 1.  There is no counting

14

1   for the complaint that was made by your wife of a lewd or

2   lascivious act with a child in 1999, and you were pending trial

3   in the state when you were to be sentenced in this case, so the

4   state charges and conviction is not counted against you because

5   it's a prior.

6          The guideline range for a total offense level of 35,

7   criminal history category 1 is 168 to 210 months.

8          The parties have agreed, you have agreed, as well as

9   the government to an upward departure for the aggravating

10  circumstances, and as a result, the motion -- or I should say

11  the stipulation, the agreement for the upward departure is to a

12  20-year term of 240 months.

13         And so even if we were to apply Blakey, Blakely -- B-

14  l-a-k-e-l-y, Booker, Fan-Fan, F-a-n-hyphen-f-a-n and Apprendi

15  v. New Jersey, in that instance, an alternative calculation of

16  your offense level with no victims being counted would be a 29

17  with a reduction of 3 for super-acceptance of responsibility

18  with a total offense level of 26, you'd be looking at a

19  guideline range of 63 to 78 months.

20         However, the Court does not believe that that would

21  be an appropriate, or a -- under 3553, which I must also apply,

22  a reasonable approach because as the underlying facts indicate,

23  and I believe that there is an acknowledgment by you in your

24  statement that as a result of your bitter divorce, and the

25  family law proceedings, that you were, in effect, whether it

1    was a mutual, or you were solicited, and/or enticed by Mr.

2    Whitmore, in the final analysis, you did participate in

3    transmitting over the computer pornographic images of your

4    children, and that was done in the context, and under the

5    circumstances, the Court can find a conspiracy, wherein it was

6    foreseeable that other children were being victimized, and that

7    pictures of other children were part of the conspiracy.

8            Therefore, to achieve adequate punishment,

9    deterrence, to provide you with treatment, the potential for

10   rehabilitation, that on all factors under 3553, I'm going to

11   find that the agreement of the parties, as an exception to

12   Booker and Fan-Fan, complying with its requirements, complying

13   with Apprendi, complying with Blakely, results in a reasonable

14   sentence, and I'm going to follow the recommendation that has

15   been made by the government.

16           It is the judgment of the Court that the defendant

17   Brooke Rowland is hereby committed to the custody of the Bureau

18   of Prisons to be imprisoned for a term of 240 months.  He shall

19   pay a special assessment of $100, payment to begin immediately.

20   I find you do not have the ability to pay a fine.  Imposition

21   of fine is waived.

22           Upon your release from prison, you shall be placed on

23   supervised release for a term of 36 months.  Within 72 hours

24   following your release from custody you shall report in person

25   to the probation office in the district to which you are

16

1    released.

2            While on supervised release, do not commit another

3    federal, state, or local crime.  Do not possess a firearm.  Do

4    not illegally possess controlled substances, comply with

5    standards and conditions recommended by the U.S. Sentencing

6    Commission.  Do not unlawfully use controlled substances.

7    Submit to one drug test within 15 days following your release.

8    On supervised release, at least two drug tests thereafter.

9            Will the parties agree that the special conditions on

10   pages 26 through 27, 1 through 11, I will not read into the

11   record, but the courtroom deputy will include those in the

12   judgment.  There is -- I don't see a sex offender state

13   registration requirement here.  Ms. Merudian (phonetic), is

14   there one?  Yes, it's No. 11.  It is No. 11, and so I see it is

15   that recommendation is part -- do you understand that, Mr.

16   Rowland?

17           THE DEFENDANT:  Yes, I do, Your Honor.

18           THE COURT:  And that will be a requirement of your

19   sentence.  Do you also understand?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  All right.  I'm going to recommend in

22   addition that you be sent to an institution where the mental

23   health facilities, and the sex offender treatment program at

24   FCI Buckner (phonetic), North Carolina is available to treat

25   the issues that you present.

17

1          I believe that all appeal rights have been waived,

2   including on sentencing.  I don't want to impair that waiver,

3   therefore, I will not advise as to appeal rights.  Do you

4   agree, Ms. Hart?

5          MS. HART:  Yes, I do.  Mr. Rowland would also request

6   a commitment to Pennsylvania, to Allenwood, Pennsylvania, if

7   that's possible.  Our understanding is that the -- I appreciate

8   the recommendation for the Buckner facility.  Mr. Rowland's and

9   my understanding is that we wouldn't necessarily receive

10  Buckner at the very beginning of his sentence, that that would

11  come later on.  But if the Court could put in a recommendation

12  to consider Allenwood, Pennsylvania.

13         THE COURT:  I will make a further recommendation of

14  Allenwood, Pennsylvania.  You want that to be the first

15  recommendation?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  All right.  With a secondary

18  recommendation for Buckner, North Carolina.

19         Are there any remaining counts?

20         MR. GAPPA:  No, Your Honor.

21         THE COURT:  Is there anything further?  I do intend

22  my oral statement of sentencing decision -- I'm incorporating

23  the presentence investigation report of the probation officer

24  to be my sentencing decision, except where I've made findings

25  to the contrary.  My oral findings prevail in that instance.

18

1       MS. HART:  Thank you, Your Honor.  And I would ask

2  that -- if the Court could request that the marshals not

3  transport him with Mr. Whitmore back to the jail.

4       THE COURT:  All right.  I will make the requests that

5  the marshals -- are the marshals present yet -- not transport

6  Mr. Rowland with Mr. Whitmore, and that you can make the

7  appropriate complaint to whatever agency you believe that you

8  should make that complaint about a threat.

9       MS. HART:  I will do that, Your Honor.  Thank you

10  very much.

11       THE COURT:  Anything further?

12       MR. GAPPA:  No, Your Honor.

13       THE DEFENDANT:  Thank you, Your Honor.

14       THE COURT:  You're welcome.

15    (Whereupon the hearing in the above-entitled matter was

16  adjourned at 3:50 p.m.)

17                      --o0o--

18                    CERTIFICATE

19    I certify that the foregoing is a correct transcript from

20  the electronic sound recording of the proceedings in the above-

21  entitled matter.

22

23  _____     August 25, 2008

24  Patricia A. Petrilla, Transcriber

25  AAERT CERT*D-113